UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

August 25, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Robin H. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-2871-BAH

Dear Counsel:

On November 4, 2022, Plaintiff Robin H. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 6) and the parties' dispositive filings (ECFs 9 and 11). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.     **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on June 29, 2020, alleging a disability onset of October 31, 2019. Tr. 171–74. Plaintiff's claim was denied initially and on reconsideration. Tr. 79–82, 84–88. On December 14, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 31–54. Following the hearing, on January 26, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 7–24. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

II.    **THE ALJ'S DECISION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ

---

[1] 42 U.S.C. §§ 301 et seq.

*Robin H. v. Kijakazi*
Civil No. 22-2871-BAH
August 25, 2023
Page 2

evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since October 31, 2019, the alleged onset date." Tr. 12. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "Dystonia (cervical and left foot); Parkinsonism; Hypothyroidism; Radiculopathy; Myofascial Pain Syndrome; and Tremors." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairment of "hypertension." Tr 12–13. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 13. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; and can frequently finger, handle and reach. The claimant can occasionally be exposed to extreme heat, extreme cold, humidity and wetness, but can never be exposed to hazards.

Tr. 14. The ALJ found that Plaintiff could perform past relevant work as a dispatcher/telecommunicator (DOT[2] #379.362-018), and thus concluded that Plaintiff was not disabled. Tr. 17–18.

### III.  LEGAL STANDARD

A disability determination must be affirmed so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence. *Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* (quoting *Craig*, 76 F.3d at 589).

---

[2] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Robin H. v. Kijakazi*
Civil No. 22-2871-BAH
August 25, 2023
Page 3

## IV.  ANALYSIS

Plaintiff raises two main arguments on appeal.  First, Plaintiff avers that the ALJ erroneously assessed the RFC by: (1) failing to set forth a narrative discussion to "support her determination that . . . Plaintiff was capable of frequently reaching, handling, and fingering"; (2) erroneously relying upon certain state agency physicians' opinions; and (3) failing to perform a function-by-function analysis of Plaintiff's work-related abilities.  ECF 9, at 3–11.  Second, Plaintiff avers that the ALJ erroneously evaluated her subjective complaints.  *Id.* at 12–16.  Defendant counters that substantial evidence supports the RFC determination because: (1) the ALJ reasonably determined that Plaintiff could frequently reach, handle, and finger; (2) the ALJ properly assessed the findings of the state agency physicians; and (3) the ALJ performed a proper function-by-function analysis.  ECF 11, at 5–17.  Defendant also avers that the ALJ supported their evaluation of Plaintiff's subjective complaints with substantial evidence.  *Id.* at 17–19.

The Court begins its analysis by analyzing Plaintiff's first argument, which it finds dispositive.  Plaintiff avers that the ALJ erroneously failed to explain their determination that Plaintiff was capable of frequently reaching, handling, and fingering, "despite [her] documented severe bilateral neural foraminal narrowing at C6-7, (Tr. 714-716), cervical radiculopathy, and chronic changes in the right greater than left C7 myotome.  (Tr. 775)."  ECF 9, at 6.

A claimant's RFC represents "the most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  In determining a claimant's RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work.'"  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).  Pursuant to Social Security Ruling ("SSR") 96-8p, an ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed at 20 C.F.R. § 404.1545(b), which include "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" that may reduce [a claimant's] "ability to do past work and other work."  20 C.F.R. § 404.1545(b); *see* SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).  "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work" of which they believe the claimant to be capable.  *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (internal quotation marks omitted) (quoting *Monroe*, 826 F.3d at 179).

As noted in *Dowling*, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it."  *Id*. (alteration in original) (citation omitted).  Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions.  *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).  "Remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Mascio*, 780 F.3d at 636.

The Court agrees with Plaintiff that remand is warranted due to the ALJ's unsupported

*Robin H. v. Kijakazi*
Civil No. 22-2871-BAH
August 25, 2023
Page 4

conclusion that Plaintiff possesses the ability to "frequently" reach.[3]  ECF 9, at 6.  In their decision, the ALJ noted Plaintiff's testimony that "her impairments affect her abilities to . . . reach overhead," as well as her testimony that "she experiences muscle spasms in her . . . upper extremities . . . ."  Tr. 14–15.  In addition, Plaintiff testified during the hearing that "[s]itting at a desk and typing with [her] arms" will "put [her] neck muscles into a spasm" which is "hard to get out of."  Tr. 42.  Plaintiff also testified during the hearing that when she reaches above her head with either arm, she triggers spasms.  *Id.*  Plaintiff further testified that she had to stop performing her past relevant work because "lifting [her] arms to type" would cause her to "go home in tears" due to pain.  Tr. 40.  Despite this testimony, the ALJ determined that Plaintiff possessed the RFC to "frequently finger, handle and reach."  Tr. 14.  But, contrary to Defendant's assertion, the ALJ did not "explain[] that examination findings generally showed full upper extremity strength with no weakness, manipulative, or reaching difficulties."  ECF 11, at 9.  Although the ALJ concluded that Plaintiff "can finger, handle, and reach with bilateral upper extremities on a frequent basis in a typical workday," Tr. 17,  the RFC analysis contains no reference to Plaintiff's upper extremity strength and fails to explicitly address Plaintiff's ability to reach.  Tr. 14–17.

To be sure, the ALJ was "not entirely persuaded" by opinions proffered by Plaintiff's pain management provider—among them, that Plaintiff could "never" reach.  Tr. 16–17.  The ALJ noted that the provider's opinions were "not based on her direct assessments of the claimant," but instead were "primarily based on the claimant's subjective reports."  Tr. 17.  But the ALJ did not specify which of the provider's opinions *were* persuasive, if any.  More importantly, the ALJ provided no specific analysis of the provider's conclusion on Plaintiff's ability to reach.  Instead, the ALJ concluded that due to Plaintiff's "conservative" treatment and "rather stable" physical examinations, "the totality of the evidence of record . . . is inconsistent with such restrictive limitations on standing, walking, sitting, postural activities, manipulative activities, and maintaining attendance and concentration as opined by" the pain management provider.  *Id*.  While this analysis appears to discredit most, if not all, of the provider's opinions, it sheds no light on why a limitation to *frequent* reaching—as opposed to *no* reaching—is warranted.[4]

Moreover, the ALJ's reference to "rather stable" physical examinations appears to be contradicted by the preceding paragraph's reference to "multilevel degenerative changes of the cervical spine" and "severe bilateral neural foraminal narrowing at C6-7."  Tr. 16.  The ALJ provides no evaluation of the significance of this medical evidence, leaving me unable to determine whether the evidence is probative of Plaintiff's reaching abilities.  The lack of such an explanation here, as well as with respect to the pain management provider's opinions, "frustrate[s] meaningful review" of the reaching limitation in the RFC.  *Mascio*, 780 F.3d at 636.

The ALJ's failure to assess Plaintiff's reaching ability was not harmless.  At the hearing,

---

[3] The SSA describes "reaching" as "extending the hands and arms in any direction[.]"  SSR  85-15, 1985 WL 56857, at *7 (Jan. 1, 1985).

[4] The ALJ also weighed two opinions provided by state agency medical consultants and found that both opinions persuasively limit Plaintiff to a reduced range of light work.  Tr. 17 (citing Exs. 1A, 3A).  But these opinions do not reference Plaintiff's ability to reach.  Tr. 55–68, 71–77.

the vocational expert testified that if Plaintiff could not engage in bilateral reaching, she "may or may not be able to maintain" her past relevant work as a dispatcher/telecommunicator, as the limitation "would significantly impact productivity." Tr. 51. The vocational expert also testified that the DOT defines the dispatcher/telecommunicator position as requiring "frequent" reaching. *Id.* The ALJ then limited Plaintiff to frequent reaching and did not determine whether Plaintiff could perform any jobs other than her past relevant work. Tr. 14, 17–18. Because the ALJ's evaluation of Plaintiff's ability to reach was unsupported by substantial evidence for the reasons discussed above, I am unable to determine whether the ALJ's subsequent conclusion—that Plaintiff's ability to perform the dispatcher/telecommunicator position "does not require the performance of work-related activities precluded by" Plaintiff's RFC—is supported by substantial evidence. Tr. 17.

ALJs "must both identify evidence that supports [their] conclusion[s] and 'build an accurate and logical bridge from that evidence to [their] conclusion[s].'" *Woods*, 888 F.3d at 694 (quoting *Monroe*, 826 F.3d at 189). Here, the ALJ failed to do so with respect to their conclusion concerning Plaintiff's ability to reach, and the error was consequential at step four. Accordingly, remand is required so that the ALJ may provide a more fulsome analysis of this issue.[5] In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct. Additionally, because the case is being remanded on other grounds, I need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider those arguments and make any required adjustments to the opinion.

V. **CONCLUSION**

For the reasons set forth herein, the SSA's judgment is REVERSED due to inadequate analysis pursuant to sentence four of 42 U.S.C. § 405(g). The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge

---

[5] On remand, the ALJ should also determine what bearing, if any, Plaintiff's "multilevel degenerative changes of the cervical spine" and "severe bilateral neural foraminal narrowing at C6-7" have upon her ability to reach. Tr. 16.